United States District Court
Southern District of Texas
**ENTERED**
January 25, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD BURLING, (TDCJ-CID #1026184) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-16-0868 |
| WARDEN JONES, et al., | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.   Background**

Donald Burling, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in March 2016, alleging the denial of medical care. Burling, representing himself and without prepaying fees, sued: Warden Jones; Karen Faust, PA; Jamie Williams, Practice Manager; Unknown first name Ruby, PA; Dr. Khan; Unknown name, Grievance Specialist Step Two Medical Specialist; Dr. Jane Doe; Barry Norwood, PA; Dr. Hancock; and Dr. Watson.

The threshold issue is whether Burling's claims may proceed. Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court must dismiss any part of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint

is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

Burling alleged that he was first diagnosed with Hepatitis C in 2003 following a blood transfusion. Burling has genotype 3, Hepatitis - C Virus, which can cause cirrhosis, gallbladder wall thickening, and gall stones. Burling asserts that approximately six years ago, he received the incorrect treatment, which has been proven to exacerbate the Hep-C of genotype 3. Burling states that in 2010, he was treated with Peginterferon and Ribavirin, which has been known to cause more problems in genotype 3 Hep-C.

Regarding recent treatment for Hepatitis C, Burling states:

> On 04/30/15, Plaintiff seen by video-conference with Dr. Khan in Huntsville Unit Infirmary (HUI). Plaintiff vented his frustration at not being treated for Hep C. Plaintiff was not examined and received no treatment or medications. Was told the new treatment (Harvoni) would be available soon. On or about 05/12/15 talked to P.A. Ruby. She examined Plaintiff and informed that liver functioning had worsened, and he was good candidate for newer treatment. Plaintiff received no treatment or medications. On or about 05/25/15 was seen and examined by P.A. Faust. Plaintiff was informed his lab results were real bad and she was to refer to Dr. Hancock for newer Hep C treatment. No treatment or medication. On or about 07/30/15 was seen by Faust to discuss latest labs. She was to email the liver specialist for referral for treatment. On or about 09/13/15 saw Dr. Jane Doe on video-conference, also Dr. Khan. Was told liver condition was worse. Dr. Khan informed that 30,000 people in TDCJ need Hep C treatment and Plaintiff would not get the newer treatment. Only 50 people every 90 days. Dr. Khan referred Plaintiff

> back to Dr. Hancock and ordered an ultra sound. No treatment or meds. On or about 09/26/15 Plaintiff was again seen by P.A. Faust after complaining liver was painful and could not sleep. She stated she would not let the liver disease go to[o] far. No treatment or meds. On 02/11/16 Plaintiff was given an ultra sound, which clearly indicated that cirrhosis of the liver from Hep C was present. On or about 04/27/16 Jamie [W]illiams, Health Services Practice Manager was consulted by Plaintiff. She told Plaintiff he would be scheduled for DMS appointment and treatment would be provided. Never received the appointment or treatment or meds. On or about 06/01/15 Plaintiff contacted Warden Jones on the yard. He discussed his concerns about lack of treatment for Hep C. Warden Jones assured Plaintiff that he would get needed treatment. No meds or treatment and Jones signed the Step One (1) Grievance response on 07/10/15. On an unknown date Dr. Watson was seen by Plaintiff. He indicated the liver condition was getting worse and Plaintiff would soon rec[ei]ve treatment. No meds or treatment have been delivered by any person to date. Plaintiff was scheduled for appointment with liver specialist and was in the infirmary as others w[e]re called for their appointments, but his appointment rescheduled. This occurred in April or May of 2016. Talked to Jaimie Williams and she stated would be rescheduled. Never happened. On or about 06/02/16 saw P.A. Faust and was examined. She was to send email to liver specialist, as lab results continued to get worse. No treatment or meds for Hep C. On or about 06/06/16 was seen and examined by P.A. Faust. Blood in stool and liver pain. She stated the treatment was needed to halt the cirrhosis and prevent further damage. Was to schedule another ultra sound. On or about 06/26/16 examined by P.A. Faust and told would get ultra sound. No meds or treatment for Hep C. On or about 08/31/16 talked to Mrs. Picket in reference to medical records. Was not given latest ultra sound results that show liver cirrhosis is worse. On or about 09/01/16 sent I-60 to request treatment to Jaimie Williams and never received a response, grievance pending.

(Docket Entry No. 13, pp. 6-7).

Burling also alleges that the longer his Hepatitis C is untreated, the greater the risk of developing liver damage, cirrhosis, and liver cancer.

Burling seeks an injunction compelling prison officials to provide him proper treatment for hepatitis C virus. Burling also seeks unspecified compensatory and punitive damages.

## II. Analysis

### A. The Legal Standard

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999)(quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart,* 174 F.3d at 534 (citing *Estelle,* 429 U.S. at 104). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998)(quoting *Farmer,* 511 U.S. at 837). "Under exceptional circumstances, a prison official's

knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmer*, 511 U.S. at 842 & n.8).

Burling complains that medical personnel at the TDCJ-CID did not treat his Hepatitis C correctly. In *Whiting v. Kelly*, 255 F. App'x 896, 2007 WL 4180592 (5th Cir. 2007), Whiting and Tippins, two inmates, argued that the defendants were deliberately indifferent to their serious medical needs by failing to provide adequate testing and treatment for HCV. They contended that the policy created and adopted by the Texas Department of Criminal Justice did not comport with the accepted standard of care for treatment of HCV. The Fifth Circuit held:

> Although they clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The district court did not err in granting summary judgment for the defendants and further did not err in dismissing the deliberate indifference claims as frivolous.

*Whiting*, 2007 WL 4180592, at *1.

In *McCarty v. Zapata Cnty.*, 243 F. App'x 792, 2007 WL 1191019 (5th Cir. 2007), a prisoner brought a civil rights action against county officials, alleging the denial of adequate medical treatment for his Hepatitis C and adequate psychiatric care for his severe depression while he was both a pretrial detainee and a convicted prisoner in county jail. The Fifth Circuit concluded that McCarty introduced no competent summary-judgment evidence establishing that the defendants refused to treat him for his Hepatitis C. His allegations established, at best, that the defendants failed to follow the course of treatment that was recommended by the physician who saw him in the hospital. This was insufficient to establish deliberate indifference. *See Domino*, 239 F.3d at 756.

Further, McCarty failed to establish any injury resulting from the alleged denial of treatment for his Hepatitis C. *See Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).

Deliberate indifference is an extremely high standard to meet. An incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, a plaintiff must allege facts showing that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

**B.    Discussion**

Burling alleged that he was not provided with the proper medication to treat Hepatitis C. The record showing an extended history of examinations, diagnoses, and medications rebuts Burling's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Burling has not alleged facts supporting an inference that the medical care provided to him was so inadequate that the defendants knew of and were deliberately indifferent to a substantial risk to Burling's health. As mentioned above, his own pleadings show that he was regularly examined by medical personnel and prescribed medications. (Docket Entry No. 13, pp. 6-7). Burling admitted that he was seen by medical personnel on numerous occasions and prescribed treatment. He indicates that in 2010, he was prescribed Peginterferon and Ribavirin, which has been known to cause more problems in genotype 3 Hep-C. His pleadings show that medical personnel were

regularly monitoring his liver function from April 2015 to August 2016. Medical personnel also performed ultrasounds to evaluate Burling's liver function. Burling complains that medical personnel unjustifiably delayed providing him with a newer treatment for Hepatitis C. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997). Burling has not alleged facts that, if proven, would support the inference that the defendants were aware of, and disregarded, a substantial risk of harm to Burling.

Burling's claim based on deliberate indifference to his serious medical needs is DISMISSED as frivolous. 28 U.S.C. § 1915A(b)(1). Any remaining pending motions are DENIED as moot.

The TDCJ-CID must deduct twenty percent of each deposit made to Burling's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1) the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)     the District Clerk for the Eastern District of Texas, Attention: Manager of the Three-Strikes List, Lori_stover@txed.uscourts.gov.

SIGNED at Houston, Texas, on Jan. 24, 2017.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE